In re K. W. S.

No. 7665.

Court of Civil Appeals of Texas, Beaumont.

April 17, 1975.

Richard Hughes, Nederland, for appellant.

Dexter Patterson, Beaumont, for appellee.

KEITH, Justice.

This is an appeal from the County Court of Jefferson County at Law No. 2, sitting as a juvenile court, wherein the court waived its jurisdiction over appellant, K. W.S., as a juvenile, certified him as an adult for criminal proceedings, and transferred him to the Criminal District Court of Jefferson County for further proceedings. Tex. Family Code Ann. § 54.02 (1975), V.T.C.A.[1]

Appellant's able appointed counsel, true to the tradition of effective advocacy, has presented the appeal with great care and precision, presenting thirteen points of error. Although we have considered each of such points carefully, we do not find it necessary to discuss each point in detail.

It is necessary, however, for a detailed statement to be made concerning the procedures employed in this instance so that we may have a proper basis for discussion of the procedural problems presented by the appeal. On June 4, 1974, the State filed its "Motion for Detention Order" seeking to detain appellant "pending trial of the above styled and numbered cause." As grounds therefor, the State alleged: "That said child should be detained because he is likely to abscond from the jurisdiction of the Court; further, suitable supervision is not being provided by a parent, guardian, custodian, or other person." The trial judge signed an order upon the same date authorizing his detention "for a period not to exceed ten (10) days, or until other arrangements can be made for said child."[2] Presumably, the orders were entered under the authority of § 54.01, but our record does not include the testimony, if any, introduced at the hearings required under the cited section.

The State filed other pleadings which we will summarize; and, for convenience in subsequent references, we will affix Roman numerals to such pleadings: I. Motion requesting juvenile court to waive its jurisdiction, filed June 4, following the several subdivisions of § 54.02(f), charged robbery.[3] II. First amended motion requesting waiver of jurisdiction, filed June

---

1. All statutory references, unless otherwise noted, are to sections in the Family Code. All emphasis has been supplied unless otherwise noted.

2. The State filed, and the trial court entered, identical motions and orders upon the following dates, all in 1974: June 14; June 24; July 5; July 15; July 29; August 8; August 20; and August 29.

3. Paragraph III of this motion to waive alleged: "That the alleged offense is of the grade of felony, to-wit: That on or about the 3rd day of June, 1974, in the County of Jefferson, State of Texas, the said [K.W.S.] did then and there, while in the course of committing theft of current money of the United States, hereinafter called 'the property,' from Jean Alexander, with intent to obtain and maintain control of the property,

## 892

12, charging murder.[4] III. Original petition, filed June 14, charging that appellant had engaged in delinquent conduct by causing the death of Jean Alexander by shooting her with a gun on June 10, whereby the State sought his adjudication as a delinquent child. The allegations followed those set out in § 53.04(d). IV. Motion requesting juvenile court to waive its jurisdiction, filed June 14, paragraph V charging murder as set out in footnote 4, supra.

In the meanwhile, the trial court ordered diagnostic tests to be made of appellant and appointed counsel to represent him in the proceedings then pending.

On August 27, summons issued to the appellant, which was served on him on August 28, commanding his appearance before the court on September 3, "then and there to answer the Petition of The State of Texas . . . wherein the said Petitioner alleges the following facts which he says constitutes the said [K.W.S.] a delinquent child, to-wit: All as fully set out in accompanying true copy of the Petition of the said Plaintiff, The State of Texas."

■ The original summons, an exhibit in our record, shows that this summons had attached to it the first motion requesting waiver of jurisdiction (pleading I, supra, charging robbery as set out in footnote 3, supra), *and* pleading *III*, supra, charging that appellant was a juvenile delinquent and seeking his adjudication as such.

The summons did not mention that a hearing was to be held on the State's motion for relinquishment of jurisdiction; the motion for relinquishment which was attached did not mention murder, although the petition to declare appellant a delinquent charged murder as the ground for an adjudication of delinquency.[5]

At the very outset of the proceedings, counsel for appellant raised the deficiencies in the summons. The Court's remarks in calling the case are set out in the margin.[6] In answer to the Court's question, counsel began by stating: "I think there is some confusion in the proceedings." He then mentioned that while he was not surprised at the fact that a certification hearing was to be held, rather than an adjudication hearing, the summons referred only to an adjudication hearing.[7]

Counsel stipulated that "the last time that this was slated" he had been advised that a certification hearing was to be conducted, and that he had ample time to pre-

---

using and exhibiting a deadly weapon, namely, a handgun, knowingly and intentionally cause bodily injury to Jean Alexander, against the peace and dignity of the State."

4. Paragraph III of this motion to waive alleged: "That the alleged offense is of the grade of felony, to-wit: That on or about the *10th* day of June, 1974, in the County of Jefferson, State of Texas, the said [K.W.S.] did then and there intentionally and knowingly cause the death of Jean Alexander by shooting her with a gun, against the peace and dignity of the State."

5. The child had been in detention at least since June 4; the petition to adjudge him a delinquent had been on file since June 14, yet the hearing was not set until September 3. See § 53.05(b)(1), requiring the hearing to be held not later than ten days after the petition was filed.

6. "THE COURT: Let the record also reflect that the State's attorney is present and that this is a hearing upon a motion to certify [K.W.S.] under Section 54.02 of Title 3 of the Family Code. All right, is that correct, Counsel?"

7. In urging the deficiencies in the summons, counsel said: "I direct the Court's attention to Section 54.02, Your Honor, which states that the summons of this particular type proceeding, if this is what the Court is going on today, must state that the hearing is for the purpose of considering the transfer of jurisdiction to the Criminal Court, which this summons absolutely fails to do, Your Honor. And, quite on the contrary, Your Honor, gives the child and attorney for the child notice that it has elected to proceed on its written petition for adjudication."

pare for either type of hearing. Finally, having been asked by the court if he still wanted "to assert your defense that the notice is not proper for the certification hearing," counsel agreed that the child had "ample notice" of the certification hearing. After the Court expressed some doubts as to the validity of the summons, counsel stated, "We'll waive that defect."

By point of error three, appellant contends that the summons was defective and "no waiver of said defect was *properly* obtained from said child"; point four contends that appellant was denied due process of law "on the issue of waiver of jurisdiction because the *child* was never given proper notice of the ultimate facts and specific issues to be confronted during the hearing." We sustain points three and four for the reasons now to be stated.

We hold that the summons served upon appellant did not conform to the mandatory requirements of § 54.02(b); thus, procedural due process was not afforded appellant. In re Gault, 387 U.S. 1, 13, 87 S. Ct. 1428, 18 L.Ed.2d 527, 538 (1967). For, as was said in Kent v. United States, 383 U.S. 541, 556, 86 S.Ct. 1045, 1055, 16 L. Ed.2d 84, 94 (1966): "It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile."

A very recent case by the San Antonio Court is highly persuasive here. In R.K.M. v. State, 520 S.W.2d 878 (Tex.Civ.App.— San Antonio, 1975), the court had before it a summons which notified the minor of a transfer hearing: " 'The purpose of the hearing at the above date and time is to consider waiver of jurisdiction and discretionary transfer.' " No mention was made of the phrase "to criminal court" anywhere

in the summons. In a well-reasoned opinion which we follow, Justice Klingeman said:

"We see no reason not to adhere to the clear and unambiguous provisions of Section 54.02(b). The statute provides that the summons must state that the hearing is for the purpose of considering discretionary transfer to criminal court. The summons here did not do so. We are not inclined to hold that the word 'must' as used in the statute means 'perhaps,' 'maybe,' 'sometime,' or 'substantially.' It is an easy matter to track the language of the statute and to do so would not work a hardship on anyone." (520 S.W.2d p. 880)

Holding that the mandatory language of the statute must be followed, the cause was reversed and remanded to the trial court.

We have already noted that the summons in the instant case notified appellant of an adjudication hearing and no mention was made *anywhere in the summons* that the hearing was for the purpose of considering a discretionary transfer to a criminal court.

Moreover, the motion for relinquishment which was attached charged aggravated robbery and appellant was transferred to the district court to stand trial for murder. Thus, in our view, the summons was fatally defective. The waiver of jurisdiction can be upheld only by a valid waiver of the notice and we now turn our attention to the question of waiver.

The waiver, if one was made, was by counsel *only* in saying: "We'll waive that defect." Waiver of rights in a juvenile proceeding are set out in § 51.09 which we reproduce in the margin.[8]

---

8. "Unless a contrary intent clearly appears elsewhere in this title, any right granted to a child by this title or by the constitution or laws of this state or the United States may be waived in proceedings under this title if:
 "(1) the waiver is made by the child and the attorney for the child;

"(2) the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;
 "(3) the waiver is voluntary; and
 "(4) the waiver is made in writing or in court proceedings that are recorded."

There is no *record* showing that the child joined in the waiver of the defects in the summons;[9] there is nothing in the record to show that the *child* was informed of and understood the right and the possible consequences of waiving the defect. In the clearest possible language, § 51.-09(1) requires the waiver to be made "by the child *and* the attorney for the child." The next subdivision (2) makes the validity of the waiver dependent upon "the *child* and the attorney waiving the right [being] informed of and [understanding] the right and the possible consequences of waiving it." The trial court did not intervene in the proceedings to interrogate *the child* as to his understanding of his rights and the possible consequences of waiver nor did the trial court inform *the child* of his rights.

In different factual contexts, but well within the spirit as well as the letter of the law relating to waiver as set out in § 51.09, other courts have held that the provisions of the section are not merely directory, but mandatory. See, e. g., In re R.E.J., 511 S. W.2d 347 (Tex.Civ.App.—Houston [1st Dist.], 1974, no writ); In re F. G., 511 S. W.2d 370 (Tex.Civ.App.—Amarillo 1974, no writ).

The author of the Commentary following § 51.09, "Texas Family Code Symposium," 5 Tex.Tech.L.Rev. 269, 525 (1974), sets out the legislative history of this section of the code, concluding: "Accordingly, the child's attorney is the only appropriate adult who may effectively *concur with a waiver of a right by a child*." Thus, it is the *child* who, after having been properly informed of and understanding his right and the possible consequences of waiving it, may waive the right. His attorney *concurs* in the waiver made by the child; the attorney has no authority to make the waiver alone. In this case, counsel's statement of "We'll waive," which indicates concurrence of the child, is insufficient under our record. The record being silent as to a *waiver by the child*, a waiver may not be presumed. Boykin v. Alabama, 395 U. S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969).

State's counsel, citing § 53.06(e), argues that appellant waived the notice of the hearing by "voluntary appearance" at the hearing. We are unwilling to hold that one who has been "detained" by the State for nearly three months, and who is still "detained" by an order of the court, *volunteers* when he appears in the court which has ordered his detention and the hearing.

Finding that the summons was fatally defective and that there was no waiver of the defects, points three and four are sustained.

We would face an entirely different question if our record showed an explanation by the trial judge of the rights of the child and the possible consequences of a waiver; and, that the child, after such explanation and understanding, voluntarily (with concurrence of his attorney) waived the defects in the summons.

Although appellant has other points of error, a review does not reveal the presence of any complaint which would require a rendition of the judgment or a dismissal of the cause following the reversal which we order. Because the summons was fatally defective, the judgment is reversed and the cause is remanded for further proceedings in accordance with the holdings herein expressed.

Reversed and remanded.

9. State's counsel says in its brief: "After a consultation with the child the Appellant's attorney stated: '. . . we'll waive that defect.'" This may very well have happened, but we have no record showing that such a conference was held in which the child participated.